UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEGAL REAL ESTATE LLC,
a Michigan Limited Liability Company;
and MADILYN T. GREINER,
individually and on behalf of a class of all others
similarly situated in Macomb County, Michigan,

**Case No. 24-cv-10278**
**Hon.**
**Jury Trial Demanded**

      Plaintiffs,

vs.

MACOMB COUNTY,
      Defendant.

---

MICHAEL GREINER (P68241)
Attorney for Plaintiffs
12000 Lutz
Warren, MI 48093
(586) 344-6284
greine48093@gmail.com

---

## PLAINTIFFS' CLASS ACTION COMPLAINT

### THE PARTIES

1. Plaintiff LEGAL REAL ESTATE LLC is a Michigan Limited Liability Company.

2. Plaintiff MADILYN T. GREINER is an individual who resides at 12000 Lutz Road,
Warren, Michigan.

3. Plaintiff MADILYN T. GREINER is the sole member of LEGAL REAL ESTATE
LLC.

4. Plaintiffs bring this action on their own behalf and on behalf of all others similarly situated in each named Defendant County pursuant to Federal Rule of Civil Procedure 23, as representatives of a class, defined herein below.

5. Defendant MACOMB COUNTY is a municipal corporation and governmental subdivision organized and existing under the laws of the State of Michigan, which is designated within M.C.L. 211.78 as a "foreclosing governmental unit" through its Treasurer for the purposes of implementing the statutory scheme set forth therein to foreclose upon and sell real property for non-payment of real property taxes.

## FACTS

6. Plaintiffs repeat, reallege and incorporate by reference all preceding paragraphs.

7. Plaintiff LEGAL REAL ESTATE LLC owned a legal interest in the real property at 29601 Hoover Road, Warren, Michigan, described as T1N,R12E SEC 10 COMM AT E 1/4 POST SEC 10; TH S0*02'30"W 735.56 FT TO PT OF BEG; TH S89*56'10"W 180 FT; THS0*02'30"W 120 FT; TH N89*56'10"E 180 FT; TH N0*02'30"E 120 FT ALG HOOVER RD TO PT OF BEG; EXC E 60.0 FT FOR HWY. 0.33A, with a parcel identification number of 12-13-10-428-019.

8. The property described above owned by Plaintiff LEGAL REAL ESTATE LLC was foreclosed upon by Defendant Macomb County as a result of delinquent real property taxes pursuant to the applicable provisions of Michigan's General Property Tax Act, MCL 211.78, 211.78a – 211.78p, ("GPTA"), existing in the year of foreclosure. This real property was transferred by Macomb County to the City of Warren, a municipal corporation, for $458,397.

9. At the time of the transfer above, upon information and belief, Plaintiff LEGAL REAL ESTATE LLC owed $37,224.86 in back real property taxes.

10. Upon information and belief, it appears that subject real property is still in the possession of the City of Warren.

11. Upon information and belief, funds have not been transferred from the City of Warren to Defendant Macomb County to consummate this foreclosure sale.

12. As a result, it appears that this foreclosure sale has yet to be finalized, and it appears that Defendant owes Plaintiffs at least $421,172.14 in excess of the minimum bid[1] (the "Surplus Proceeds").

## THE SUBJECT MATTER

13. Plaintiffs repeat, reallege and incorporate by reference all preceding paragraphs.

14. The general subject matter of this action is the Michigan statutory scheme for the collection of unpaid and delinquent real property taxes through the real property forfeiture and foreclosure statutory process set forth within those amendments to the Michigan General Property Tax Act originally contained within Act No. 123, of 1999, being M.C.L. 211.78 - 211.78a-p, as amended (the "Tax Collection Statute").

15. The specific subject matter of this action includes, but may not be limited to, the following statutory provisions set forth therein:

(i) M.C.L. 211.78k, which, inter alia, requires that a property tax foreclosure judgment provide that fee simple title to property foreclosed vests absolutely in the foreclosing governmental unit unless redemption is effected, but does not require that Surplus Proceeds after sale by the foreclosing governmental unit be paid to Plaintiff property owners; and,

(ii) M.C.L. 211.78m, which allows a foreclosing governmental unit to sell foreclosed real property at auction in the manner(s) set forth therein and allows it also retain for its own use, and

---

[1] "Minimum Bid" is defined in the GPTA as "all delinquent taxes, interest, penalties and fees due on the property . . . [and] expenses of administering the sale, including all preparations for the sale."

ultimately place within the Defendant County general fund all surplus money obtained on sale in excess of the "minimum bid" after satisfying all delinquent taxes, interest, penalties, fees due and pro-rata estimated expense of administering the sale of the property at auction.

16. Defendant has foreclosed on and retained money from real property tax foreclosure auctions conducted pursuant to the Tax Collection Statute in excess of the amount owed for delinquent taxes, interest, penalties, fees and the estimated pro-rata expenses of administering the sale with respect to thousands of properties.

17. In July 2020, the Michigan Supreme Court vindicated the arguments made by Plaintiffs' counsel in this matter, ruling that the retention of Surplus Proceeds constituted an unconstitutional taking. See *Rafaeli, LLC v. Oakland Co*, 505 Mich. 429; 952 N.W.2d 434 (Mich. 2020). The *Rafaeli* Court held:

> As the foreclosing governmental unit under the GPTA, defendants [Oakland County and Oakland County Treasurer] were entitled to seize plaintiffs' properties to satisfy the unpaid delinquent real-property taxes as well as any interest, penalties, and fees associated with the foreclosure and sale of plaintiffs' properties. But defendants could only collect the amount plaintiffs owed and nothing more. Once defendants foreclosed on plaintiffs' properties, obtained title to those properties, and sold them to satisfy plaintiffs' unpaid taxes, interest, penalties, and fees related to the foreclosures, any surplus resulting from those sales belonged to plaintiffs. That is, after the sale proceeds are distributed in accordance with the GPTA's order of priority, any surplus that remains is the property of plaintiffs, and defendants were required to return that property to plaintiffs. Id. 952 N.W.2d at 474-475.

18. In response to the *Rafaeli* decision, the Michigan legislature crafted a legislative fix, 2020 PA 256, MCL 211.78t, which created a procedure for taxpayers to recover excess proceeds. However this procedure applied only to property transferred or sold under section 78m after July 17, 2020, unless "the Michigan supreme court orders that its decision in *Rafaeli, LLC v Oakland County*, docket no. 156849, applies retroactively." MCL 211.78t(1)(b)(i).

19. In 2022, the Michigan Court of Appeals handed down its decision in *Delores Proctor v. Saginaw Cnty. Bd. of Comm'rs,* COA 349633 (Mich. January 25, 2022), ruling that despite claims to the contrary, the *Rafaeli* decision applies retroactively as well as prospectively.

20. Pursuant to *Hart v. City of Detroit*, 416 Mich 488; 331 NW2d 438 (1982), a takings claim against governmental entities such as Defendant in this case must be brought withing six years. MCL 600.5813.

21. As a result, at the time of filing of this case, Plaintiffs whose property was foreclosed upon between 2017 and 2020 are entitled to the refund of the surplus proceeds have been left without a remedy.

22. Plaintiffs have constitutional and prudential standing under Article III of the United States Constitution to pursue the claims set forth herein.

23. Upon demand made, Defendant has refused to surrender and deliver to Plaintiffs the Surplus Proceeds it has retained.

24. Said injury can be remedied and redressed by this Court by its granting of the relief hereinafter requested.

25. As Plaintiff, their legal interest owned in their real property commonly described herein was divested by the Defendant, and ownership thereof became vested in Defendant

pursuant to judgments of property tax foreclosure entered pursuant to said applicable provisions of the GPTA in calendar year 2018.

26. Thereafter, under the auspices of MCL 211.78m, at public auctions occurring in calendar year 2018, the Defendant Macomb County sold the respective property at a price in excess of the minimum bid resulting in the specific Surplus Proceeds set forth herein.

27. Said Surplus Proceeds so arising are personalty, constituting the individually named Plaintiffs' equity in their former tax foreclosed real property, reflecting their original and ongoing investments therein, in fact, law and equity owned by said Plaintiffs.

28. Notwithstanding the same, the Defendant Counties identified herein have retained said Surplus Proceeds without disgorgement to the respective owner Plaintiff without just compensation therefore in violation of the 5th Amendment of the United States Constitution and Article 10, Section 2 of the Michigan Constitution of 1963.

29. Said constitutional injuries can be remedied and redressed by this Court by its granting of the relief hereinafter requested.

## JURISDICTION AND VENUE

30. Plaintiffs repeat, reallege and incorporate herein by reference all preceding paragraphs.

31. This Honorable Court has subject matter jurisdiction of this action as the federal claims in this Complaint arise under the Fifth Amendment to the United States Constitution and, as a result thereof, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331.

32. This Honorable Court has supplemental jurisdiction over the claims in this Complaint arising under the Michigan Constitution of 1963 pursuant to 28 U.S.C § 1367 since those claims

arise out of a common nucleus of operative facts with the federal claims that are within this court's original jurisdiction.

33. Venue of this action is properly laid in the United States District Court for the Eastern District of Michigan, as, among other things, Plaintiffs and Defendant are within its geographical jurisdiction and conduct business within same.

## CLASS ACTION ALLEGATIONS

34. Plaintiffs repeat, reallege and incorporate herein by reference all preceding paragraphs.

35. Plaintiffs respectfully request that this Honorable Court enter an Order certifying this action as a Class Action pursuant to Federal Rule of Civil Procedure 23, providing therein, inter alia, that counsel for the named Plaintiffs be appointed Class counsel.

36. The definition of the Class requested to be certified is:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Defendant MACOMB COUNTY and which was sold during the Class Period by Defendant;

where "Eligible Property" means

a parcel of real property foreclosed by Defendant for the non-payment of real property taxes, and which was sold during the Class Period by Defendant for an amount in excess of the Minimum Sale Price; and,

where "Class Period" means

the time for each Defendant County during which that County acted as a foreclosing governmental unit, beginning no earlier than September 1, 2017 and ending on December 31, 2020, inclusive.

Excluded from the Class are Defendants, the presiding Judge and Court staff assigned to this case, the U.S. Department of Treasury, the Internal Revenue Service, the State of Michigan, and the Michigan Department of Treasury. Plaintiffs reserve the right to modify or amend the Class Definition, as appropriate, during the course of this litigation.

37. The Class is so numerous that joinder of all members is impracticable as there are thousands of class members.

38. Plaintiffs' claims are typical, excepting the actual amount of Surplus Proceeds taken, of the claims of the Class.

39. Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel competent and experienced.

40. There are questions of law and fact common to the Class.

41. Defendant has acted and refused to act on grounds that apply generally to the Class as a whole.

42. An adjudication as to the constitutional Takings Clause issues asserted herein with respect to the named Plaintiffs only would, as a practical matter, be dispositive of the common interests of other members of the putative class not just named parties in this action.

43. The questions of law or fact common to the named Plaintiffs and Plaintiff Class Members predominate over any questions affecting only individual members, the latter which would primarily, or only, consist of the amount of the individual Surplus Proceeds taken from them and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**COUNT I VIOLATION OF THE UNITED STATES CONSTITUTION'S FIFTH AMENDMENT PROHIBITION ON TAKINGS WITHOUT JUST COMPENSATION AND GUARANTEE OF DUE PROCESS 42 U.S.C. § 1983**

44. Plaintiffs repeat, reallege, and incorporate herein by reference all preceding paragraphs.

45. On May 25, 2023, the U.S. Supreme Court handed down its ruling in *Tyler v Hennepin County, Minnesota, et al.*, U.S. Case no. 22-166 (May 25, 2023) holding that a county retaining the surplus proceeds in tax foreclosure sales violates the Takings Clause of the Fifth Amendment to the U.S. Constitution.

46. The Fifth Amendment to the United States Constitution provides, in part material hereto, that "nor shall private property be taken for public use, without just compensation," U.S. Const., Amend. V, said constitutional prohibition being known in colloquial vernacular and jurisprudentially as the "Takings Clause" of the United States Constitution.

47. The Takings Clause is applicable to all States of the United States of America, and by extension their subdivisions, instrumentalities, and departments, including the Defendants. See, e.g., *Chicago, B&Q R. Co. v. Chicago*, 166 U.S. 226 (1897) and *Palazzolo v. Rhode Island*, 553 U.S. 606 (2001).

48. "[T]he purpose of the Takings Clause is to prevent the government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Palazzolo*, 533 U.S. at 618.

49. Defendant's retention of the Surplus Proceeds amounts to a taking of private property for public use without just compensation.

50. A legislature cannot constitutionally enact a law which effects a taking of private property without just compensation. See, e.g., *Acker v. Commissioner of Internal Revenue*, 258 F. 2d 568 (6th Cir., 1958), aff'd 361 U.S. 87 (1959).

51. The common law of the State of Michigan recognizes that any Surplus Proceeds arising from a mortgage foreclosure sale are personalty and a person with an ownership interest in, or who succeeds to an ownership interest in the foreclosed real property, has a right to claim ownership of the personalty. See, e.g., *Smith v. Smith*, 13 Mich. 258 (1865); also see *Rossman v. Marsh*, 287 Mich. 720 (1939) (proceeds from the sale of lands are personal property and not real property).

52. The judicial and non-judicial mortgage (and land contract) foreclosure statutes of the State of Michigan recognize that any Surplus Proceeds arising from a mortgage foreclosure sale of real property are, unless subject to subordinate secured creditors, owned by the former owner of the real property. M.C.L. 600.3125 (judicial foreclosure); M.C.L. 600.3257 (foreclosure by advertisement).

53. By requiring that Surplus Proceeds arising from the sale of tax foreclosed real property be delivered to the former owners, other States within the United States, including, but not limited to, the States of Idaho, California, Alabama, Florida, Georgia and Indiana, impliedly recognize that to do otherwise would result in a violation of the Takings Clause of the Fifth Amendment to the United States Constitution.

54. Plaintiffs and Plaintiff Class Members had a cognizable property interest in their respective parcels and have a cognizable property interest in said Surplus Proceeds protected by the Fifth Amendment to the United States Constitution and its Takings Clause.

55. Defendant physically took Plaintiffs' and Plaintiff Class Members' real property and physically took, now possess, and refuse to tender and deliver to Plaintiffs and the Plaintiff Class Members, their Surplus Proceeds.

56. The Surplus Proceeds from the auction of real property belonging to Plaintiffs and Plaintiff Class Members, have been or will be expended by Defendant for specific and general public uses, forcing Plaintiffs and Plaintiff Class Members to bear alone public burdens which in all fairness and justice should be borne by the public as a whole.

57. Defendant did not offer to pay in advance of the said taking(s), nor contemporaneously therewith, nor at any time thereafter just compensation for said taking(s).

58. Neither Plaintiffs, nor the Plaintiff Class Members, have been provided by Defendant any procedure whatsoever, and therefore no adequate procedure whatsoever, to seek just compensation for said taking(s), and accordingly Plaintiffs' rights to Due Process guaranteed by the Fifth Amendment have been violated.

59. Plaintiffs' and Plaintiff Class Members' claims asserted herein before this Honorable Court are mature and ripe.

60. By means of the premises described herein Plaintiffs and Plaintiff Class Members have suffered great and material damages and The Takings Clause requires Defendant to pay Plaintiffs and Plaintiff Class Members money damages tantamount to and consisting of just compensation for the taking(s) of their private property for public use.

61. Plaintiffs' and Plaintiff Class Members' constitutional right to just compensation for government seizure of their property for public purposes is a fundamental right deeply rooted in this country's legal traditions and central to the concept of ordered liberty.

62. By taking Plaintiffs' and Plaintiff Class Members' private property for public purposes without just compensation, Defendant have deprived Plaintiffs and Plaintiff Class Members of that fundamental right.

63. 42 U.S.C. § 1983 provides that,

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia. (R.S. §1979; Pub. L. 96–170, §1, Dec. 29, 1979, 93 Stat. 1284; Pub. L. 104–317, title III, §309(c), Oct. 19, 1996, 110 Stat. 3853.)

64. It is the policy and custom of Defendant to use for public purposes and not deliver or tender to Plaintiffs or Plaintiff Class Members their private property, being said Surplus Proceeds, taken from them without just compensation by Defendants.

65. Defendant is a person under 42 U.S.C. § 1983.

66. By means of the premises described herein, Plaintiffs and Plaintiff Class Members have suffered great and material damages and pursuant to 42 U.S.C. § 1983.  Defendant is liable to pay Plaintiffs and Plaintiff Class Members money damages for their injuries so suffered.

67. In material part 28 U.S.C. § 2201 (a) provides, that "[i]n a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court issue a declaratory judgment declaring and adjudging that the Defendant's use and takings of the Surplus Proceeds constitute a taking of private property for public use without just compensation in violation of the Fifth Amendment to the United States Constitution; and that Defendant's failure to provide any procedure whatsoever, and therefore no adequate procedure whatsoever, to seek just compensation for said taking(s), violated Plaintiffs' rights to Due Process guaranteed by the Fifth Amendment; and further, Plaintiffs, individually, and on behalf of the Plaintiff Class Members, demand judgment against Defendant in that amount to which they are found entitled to compensate them for their injuries, together with costs, interest, reasonable attorney fees and any other relief available in law and equity.

### COUNT II VIOLATION OF THE TAKINGS CLAUSE OF THE MICHIGAN CONSTITUTION OF 1963, ARTICLE 10, § 2 – INVERSE CONDEMNATION

68. Plaintiffs repeat, reallege and incorporate herein by reference all preceding paragraphs.

69. Under Article 10, § 2, of the Michigan Constitution of 1963, the government may not take private property for public use without just compensation therefore being first made or secured in a manner prescribed by law.

70. This state constitutional provision protects intangible property, including equity in homes and land.

71. Plaintiffs and Plaintiff Class Members owned equity in their respective properties that exceeded the value of their respective debts to the Defendants.

72. The State of Michigan "recognizes a cause of action, often referred to as an inverse or reverse condemnation suit, for a de facto taking when the State fails to utilize the appropriate legal mechanisms to condemn property for public use." *Peterman v DNR*, 446 Mich. 177, 187-188 (1994). An inverse condemnation may also occur even if there is not a physical taking of the property where a governmental regulation effectively prevents use of a landowner's property for any profitable purpose. Id. Stated differently, "In the regulatory context, a compensable taking occurs when the government uses its power to so restrict the use of property that its owner has been deprived of all economically viable use." Miller Brothers v DNR, 203 Mich. App. 674, 679 (1994), citing Electrotec, Inc. v H.F. Campbell Co., 433 Mich. 57, 68-69 (1989).

73. By taking absolute title to Plaintiffs' and Plaintiff Class Members' properties and retaining profits from the auction of their properties, over and above the amount of unpaid taxes and administrative expenses, costs, and interest owed by each debtor, Defendant violated the Michigan Constitution's Takings Clause and deprived Plaintiffs of the economic value of their interest in the foreclosed-upon real property.

74. Defendant has refused to acknowledge that their actions caused a compensable loss to Plaintiffs. Defendant has appropriated this protected property interest without using the mandatory process outlined under the Uniform Condemnation Procedures Act, MCL 213.51, et seq.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court issue a declaratory judgment declaring and adjudging that the Defendant's use and takings of the Surplus Proceeds constitute a taking of private property for public use without just compensation in violation of the Takings Clause of the Michigan Constitution; and that Defendant must compensate Plaintiffs for their loss of economic value in the foreclosed-upon properties; and further, Plaintiffs, individually, and on behalf of the Plaintiff Class Members, demand judgment against Defendant in that amount to which they are found entitled to compensate them for their injuries, together with costs, interest, reasonable attorney fees and any other relief available in law and equity.

Respectfully submitted,
/s/ Michael Greiner
Michael Greiner (P68241)
Attorney for Plaintiffs
12000 Lutz
Warren, MI 48093
586-344-6284
Greine48093@gmail.com

February 1, 2024